**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No.  26-cv-4055 |
| v. | |
| SWIER LAW FIRM, PROF. LLC; SCOTT R. SWIER; MICHAEL HENDERSON; LINDSAY M. HARRIS; and JEFFRY DENISON, as Personal Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust, | **COMPLAINT** |
| Defendants. | |

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to

28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint

against Defendants Swier Law Firm, Prof. LLC ("Swier Firm"), Scott R. Swier ("Swier"),

Michael Henderson ("Henderson"), Lindsay M. Harris ("Harris" and together with the Swier Firm,

Swier, and Henderson, "Swier Defendants"), and Jeffry Denison ("Denison")[1], as Personal

Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust,

alleges as follows:

---

[1] ALPS will refer to the Swier Defendants and Denison, in his capacity as Personal Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust, collectively as "Defendants".

4912-1501-8135

## PARTIES, JURISDICTION, AND VENUE

1.      ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

2.      The Swier Firm is, upon information and belief, a professional limited liability company with its principal place of business in Avon, South Dakota.

3.      The Swier Firm has, upon information and belief, two members—Swier and Brooke Swier Schloss—both of whom, upon information and belief, are domiciled in and citizens of the State of South Dakota.  The Swier Firm is, upon information and belief, a citizen of the State of South Dakota.

4.      Upon information and belief, no partner of the Swier Firm is a citizen of the State of Montana.

5.      Swier is an attorney licensed in the State of South Dakota; a member of the Swier Firm, whose principal place of business is located in Avon, South Dakota; and, upon information and belief, a resident of the State of South Dakota; Swier is, upon information and belief, domiciled in and a citizen of the State of South Dakota.

6.      Henderson is an attorney and, upon information and belief, domiciled in and a citizen of the State of South Dakota.

7.      Harris is an attorney licensed in the State of South Dakota; the owner and managing member of Harris Law & Co., whose principal place of business is located in Sioux Falls, South Dakota; and, upon information and belief, a resident of the State of South Dakota; Harris is, upon information and belief, domiciled in and a citizen of the State of South Dakota.

2

8.    Denison is, upon information and belief, the current Personal Representative of the Estate of Shirley A. Hickey ("Hickey Estate") and Trustee of the Shirley A. Hickey Trust ("Hickey Trust" and together with Denison and the Hickey Estate, "Hickey Trust and Estate"); and, upon information and belief, a resident of the State of South Dakota; Denison is, upon information and belief, domiciled in and a citizen of the State of South Dakota.

9.    The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.    Venue is proper in the Southern Division of this District Court, pursuant to 28 U.S.C. § 1391(b), because the Swier Defendants reside in the Southern Division and a substantial part of the events giving rise to the claims for relief occurred in this District.

## GENERAL ALLEGATIONS

### I. Introduction

11.    In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS14252-8 issued by ALPS to the Swier Firm for the policy period December 30, 2017 to December 30, 2018 ("Policy") does not afford indemnity coverage to the Swier Defendants with respect to the claim ("Claim"), or certain aspects of it, by the Hickey Trust and Estate and others against the Swier Defendants, as presently articulated in the suits styled *Jeffry Denison, as Personal Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust v. Swier Law Firm, Prof. LLC, et al.*, No. 49CIV18-001833 (2d. Jud. Cir. Ct. Minnehaha Cty., S.D.) ("Malpractice Suit"), and *Hickey, et al. v. Lippert, et al.*, No. 49CIV20-001300 (2d. Jud. Cir. Ct. Minnehaha Cty., S.D.) ("Hickey Regency Trust Suit").  A true and correct copy of the Policy is attached as Exhibit A.

4912-1501-8135

## II.  Background

### A.  Hickey Family Background

12.    The Claim arises from financial and other disputes among the family of Shirley Hickey ("Shirley") and Cliff Hickey ("Cliff") (collectively, "Hickey Family").  The Swier Defendants at various times represented certain members of the Hickey Family and certain trusts related to the Hickey Family in these intrafamilial disputes.

13.    Cliff and Shirley Hickey married in 1956 and had eight children: Bradley Hickey ("Bradley"), Terence Hickey ("Terence"), Vance Hickey ("Vance"), Michelle Hoesing ("Michelle"), Warren Hickey ("Warren"), Jeannine Hickey-Reuer ("Jeannine"), Kristina Lippert ("Lippert"), and Darren Hickey ("Darren").  (*In re Discipline of Scott R. Swier*, 2020 S.D. 7, ¶ 11, 939 N.W.2d 855, 859 (2020) ("Discipline Opinion")[2].  A true and correct copy of the Discipline Opinion is attached as Exhibit B.).  The Hickey Family lived in Chamberlain, South Dakota and operated multiple successful businesses, including a residential and commercial contracting business, a lumberyard, and a nursing home and assisted living facility.  (Exhibit B at 6, ¶ 11).  Shirley and Cliff employed three of their sons in these businesses.  (*Id*.).

14.    Beginning in 1988, the Hickey Family's contracting business, Cliff Hickey Construction ("CHC"), began subcontracting HVAC work to a heating and cooling business owned by their son, Warren.  (Exhibit B at 6, ¶ 12).  This business arrangement, as well as other perceived preferential arrangements between Warren and his parents "created animosity and tension between the sons Shirley and Cliff employed, as well as the other siblings."  (*Id*.).  In 2007,

---

[2] ALPS refers to the South Dakota Supreme Court's February 19, 2020 Discipline Opinion pertaining to Swier, a publicly-available record, because it provides a comprehensive background of the Hickey Family, the financial and other disputes among members of the Hickey Family, and the roles of the Swier Defendants and others in these disputes.

4912-1501-8135

Cliff passed away, one of the Hickey sons purchased the Hickey Family's lumberyard, and another son purchased the assets of CHC.  (*Id*. at 6, ¶ 13).  After Cliff's passing, Shirley "relied on Warren to maintain her properties" and agreed Warren would documents his expenses and be paid at a later date.  (*Id*.).

### B. Thompson Firm's Representation of Shirley and the Hickey Living Trust

15.     In March 2010, Shirley retained the now deceased Carolyn A. Thompson ("Thompson") of Thompson Law, PC ("Thompson Firm") to draft the Shirley A. Hickey Living Trust ("Hickey Living Trust").  (Exhibit B at 7, ¶ 14; December 12, 2023 Fourth Amended Complaint in the Malpractice Suit ("December 2023 Complaint") ¶ 7.  A true and correct copy of the December 2023 Complaint is attached as Exhibit C.).  Under the terms of the Hickey Living Trust, (a) Shirley's youngest children, Lippert and Darren, "were named successor co-trustees", (b) if Lippert or Darren "were unable or unwilling to serve," Warren would serve with the remaining successor co-trustee, and (c) all of Shirley's children were treated equally with respect to distribution.  (Exhibit B at 7, ¶ 14).

16.     In 2012, Shirley began working to "get her financial affairs in order." (Exhibit B at 7, ¶ 15).  In November 2015, Shirley requested the Thompson Firm draft a promissory note in favor of Warren ("Promissory Note") for amounts owed in connection with Warren's maintenance of Shirley's properties and otherwise.  (*Id*. at 7, ¶ 16).  Harris was an associate with the Thompson Firm in November 2015 and was tasked with drafting the Promissory Note for Warren.  (*Id*.).

17.     The Promissory Note "provided that Shirley, as trustee, or her successors under the [Hickey] Living Trust, promised to pay Warren $4,000,000 with interest[.]"  (Exhibit B at 7, ¶ 16).

5

Shirley executed the Promissory Note, Lippert was present for execution, and Lippert did not object to the purpose or amount of the Promissory Note. (*Id.*).

18.     Harris subsequently worked with Ms. Thompson "on matters pertaining to Shirley's life and eventually took over the file for [the] Thompson [Firm]." (Exhibit B at 8, ¶ 17). In September 2016, Shirley and Lippert met with Harris at the Thompson Firm's office to amend the Hickey Living Trust. (*Id.*; Exhibit C ¶ 8). On September 7, 2016, Shirley executed the First Amendment and Restatement of the Hickey Living Trust, which (a) removed Warren as a successor co-trustee, (b) removed Shirley's power to sign any agreements, pay debts, or take any action regarding the Hickey Living Trust without Lippert's approval, (c) named Lippert as Shirley's property power of attorney, and (d) named Lippert as Shirley's agent with respect to her healthcare power of attorney. (Exhibit B at 8, ¶ 17; Exhibit C ¶ 8).

19.     In January 2017, Shirley moved to an assisted living facility in Sioux Falls, South Dakota. (Exhibit B at 8, ¶ 19). The Thompson Firm continued to represent Shirley and the Hickey Family Trust through on or around March 29, 2017. (*Id.* at 9, ¶ 20).

## C. Swier Firm's Representation of Shirley, the Hickey Living Trust, and Lippert

20.     On December 5, 2016, after leaving the Thompson Firm on October 7, 2016, Harris joined the Swier Firm as "Head of Estate Planning, Business, & Corporate Law." (Exhibit B at 9, ¶ 20). In or around March 2017, Lippert contacted Harris regarding "transferring Shirley's file" to the Swier Firm. (*Id.*). On March 29, 2017, Lippert, as Shirley's power of attorney, executed a "file transfer authorization" regarding transfer of Shirley's file and the Hickey Living Trust file from the Thompson Firm to the Swier Firm. (*Id.*). On March 30, 2017, Shirley, individually and as trustee of the Hickey Living Trust, executed a similar authorization regarding transfer of her files to the Swier Firm. (*Id.*).

4912-1501-8135

21.     On April 17, 2017, the Thompson Firm's files for Shirley and the Hickey Living Trust were transferred to the Swier Firm.  (Exhibit B at 9, ¶ 21; Exhibit C ¶ 11).

22.     On August 18, 2017, Shirley met with Jack Theeler ("Theeler"), an attorney she and Cliff had retained on previous occasions, to discuss her estate plan.  (Exhibit B at 10, ¶ 23; Exhibit C ¶ 13).  By email correspondence to Harris dated August 21, 2017, Theeler advised Harris that Shirley had asked Theeler to review her estate plan, requested file materials, and stated "I look forward to working with you for an orderly transition for both of us to better represent our mutual client."  (Exhibit B at 10, ¶ 24; Exhibit C ¶ 14).

### 1.  Guardianship and Conservatorship Proceedings Regarding Shirley

23.     On or around August 23, 2017, subsequent to Theeler's August 21, 2017 email correspondence to Harris, the Swier Firm filed a motion seeking "appointment of a temporary guardian and conservator for Shirley, without notice, pursuant to SDCL 29A-5-315[.]"  (Exhibit B at 10, ¶ 26; Exhibit C ¶¶ 19, 25).

24.     On August 24, 2017, upon the Swier Firm's motion in *In re Guardianship and Conservatorship of Shirley A. Hickey*, No. 49GDN17-000106 (2d Jud. Cir. Ct. Minnehaha Cty., S.D.) ("Hickey Guardianship Proceeding"), the court entered: (a) a "temporary restraining order (without notice) prohibiting Warren from having contact with Shirley"; (b) an "order granting the motion for temporary guardian and conservator"; (c) an "order waiving the evaluation of Shirley's incapacity and mental and physical condition required by SDCL 29A-5-306"; and (d) "[l]etters of temporary guardianship and conservatorship."  (Exhibit B at 11-12, ¶ 28).  Shirley was informed of the court's orders on August 24, 2017 and she informed Theeler of the orders on August 25, 2017.  (*Id*. at 12, ¶ 28).

4912-1501-8135

25.     The Hickey Trust and Estate alleges the Swier Firm "did not obtain Shirley's consent prior to filing" the Hickey Guardianship Proceeding and Shirley "contested" the Hickey Guardianship Proceeding.  (Exhibit C ¶¶ 26-27).

26.     On September 13, 2017, the court in the Hickey Guardianship Proceeding held a preliminary hearing on the Swier Firm's motion. (Exhibit B at 12, ¶ 30).  At the hearing, the Swier Firm represented Lippert and Theeler represented Shirley.  (*Id.*).  The court determined "there did not exist clear and convincing evidence of a need for a guardian for Shirley", "terminated the temporary guardianship, replaced [Lippert] with the First National Bank Trust Department as temporary conservator, lifted the temporary restraining order (TRO) against Warren, appointed Theeler's office as Shirley's counsel, and appointed Andrew Damgaard to act as the court representative and investigator pursuant to SDCL 29A-5-310."  (*Id*. at 12-13, ¶ 30).

27.     In an affidavit Shirley filed in support of her petition to revoke the temporary guardianship and conservatorship, she alleged (a) Lippert "had been deceptive and abusive in obtaining the temporary guardianship", (b) Harris "misrepresented [Shirley's] interests and disclosed statements protected by attorney-client privilege", a privilege Shirley had not waived, and (3) Shirley was "very upset" by the actions of Lippert and Harris.  (Exhibit B at 13, ¶ 31).

28.     On January 18, 2018, the court in the Hickey Guardianship Proceeding held a final hearing and denied the petition to appoint a conservator.  (Exhibit B at 14, ¶ 33; Exhibit C ¶ 32).  The Swier Firm continued to represent Lippert in the Hickey Guardianship Proceeding and otherwise.  (Exhibit B at 14, ¶ 35).  On January 18, 2018, the day of the final hearing, Shirley executed a "Removal and Appointment of Trustee" for the Hickey Living Trust, which removed Lippert as the current co-trustee and appointed First National Bank Trust Department as the co-trustee of the Hickey Living Trust.  (*Id*. at 14, ¶ 34).

8

4912-1501-8135

### 2. Lippert DJ Suit

29.     On March 6, 2018, on behalf of Lippert, the Swier Firm filed a declaratory judgment complaint in the Circuit Court of Brule County, South Dakota ("Lippert DJ Suit"), against Shirley, the Hickey Living Trust, and First National Bank in Sioux Falls, South Dakota ("First National Bank").  (Exhibit B at 15, ¶ 36; Exhibit C ¶ 33).  In the Lippert DJ Suit, Lippert challenged "Shirley's amendment to the [Hickey Living] Trust removing [Lippert] as a co-trustee" and sought either enforcement of the Hickey Living Trust's dispute resolution provisions or a declaration Shirley's January 18, 2018 amendment to the Hickey Living Trust was null and void. (Exhibit B at 15, ¶ 36).

30.     On March 23, 2018, in the Lippert DJ Suit, Shirley filed a motion to change venue, a motion to request judicial notice of the Hickey Guardianship Proceeding, and a motion to disqualify Harris and the Swier Firm as counsel for Lippert.  (Exhibit B at 15, ¶ 37; Exhibit C ¶ 34). On or around May 23, 2018, upon Shirley's motion, venue was transferred to the Circuit Court in Minnehaha County, South Dakota under Case No. 49CIV18-001833.  (Exhibit B at 15, ¶ 37; Exhibit C ¶ 35).

31.     On August 20, 2018, the court in the Lippert DJ Suit held a hearing on Shirley's motion to disqualify the Swier Firm.  (Exhibit B at 15, ¶ 38; Exhibit C ¶ 37).  Following the hearing, the court in the Lippert DJ Suit entered the following findings of fact and conclusions of law, *inter alia*: (a) Harris and the Swier Firm "are prohibited by Rule 1.9 from representing [Lippert] against Shirley, their former client," in the Lippert DJ Suit; (b) Harris and the Swier Firm "are disqualified from further representation of [Lippert]" in the Lippert DJ Suit; (c) Harris and the Swier Firm "violated Rule 1.7 by representing [Lippert] against Shirley in" the Lippert DJ Suit and "are disqualified from further representation of [Lippert]" in the Lippert DJ Suit; (d) Swier,

9

Henderson, and the Swier Firm "violated Rule 1.10 by representing [Lippert] against Shirley in [the Lippert DJ Suit]" and "are disqualified from further representation of [Lippert]" in the Lippert DJ Suit; and (e) Swier "and his associates have acknowledged that the bringing of the [Lippert DJ Suit] constituted a conflict of interest and should not have been brought by them." (Exhibit B at 16-17, ¶¶ 39-40; Exhibit C ¶¶ 40-42). Lippert subsequently dismissed with prejudice all claims in the Lippert DJ Suit against Shirley, the Hickey Living Trust, and First National Bank.

32.    The Swier Firm billed Shirley and the Hickey Living Trust "more than $144,000.00 of legal fees between April 2017 and September 2018, including thousands of dollars in fees for bringing the [Lippert DJ Suit] and contesting [the Swier Firm's] removal as attorneys for [Lippert] in that action. . . . The fees were paid from Shirley Hickey's assets." (Exhibit B at 17, ¶ 40).

### D.  The Claim

### 1.  Malpractice Suit

### a.  May 2019 Complaint and July 2019 Crossclaim

33.    On May 28, 2019, after realignment of the parties in the Lippert DJ Suit, Shirley, the Hickey Living Trust, and First National Bank filed a complaint ("May 2019 Complaint") against the Swier Defendants and Lippert in the matter ALPS will subsequently refer to as the Malpractice Suit. A true and correct copy of the May 2019 Complaint in the Malpractice Suit is attached as Exhibit D.

34.    The May 2019 Complaint alleged eight causes of action: (a) breach of contract against the Swier Defendants; (b) legal malpractice and negligent misrepresentation against the Swier Defendants; (c) breach of fiduciary duty, duty of loyalty, and duty of good faith against the Swier Defendants; (d) breach of fiduciary duty against Lippert; (e) aiding and abetting breach of fiduciary duty against the Swier Defendants; (f) breach of the duty of loyalty against Lippert;

(g) breach of the duty of good faith against Lippert; and (h) malicious prosecution against Lippert. (Exhibit D).

35.    On July 29, 2019, Lippert filed a crossclaim in the Malpractice Suit against the Swier Defendants ("July 2019 Crossclaim").  A true and correct copy of the July 2019 Crossclaim in the Malpractice Suit is attached as Exhibit E.

36.    In the July 2019 Crossclaim, Lippert alleged breach of fiduciary duties against the Swier Defendants in connection with their representation of Lippert in the Hickey Guardianship Proceeding and the Lippert DJ Suit.  (Exhibit E ¶ 38).  Lippert alleged any damages sustained by Shirley and the Hickey Living Trust would be "solely the result of a breach of the duties owed by the" Swier Defendants and sought a declaration the Swier Defendants must indemnify Lippert in the event of a judgment against Lippert in the Malpractice Suit.  (*Id*. ¶¶ 40-41 & Prayer for Relief).

37.    On September 12, 2019, upon information and belief, Shirley passed away and First National Bank became the sole trustee of the Hickey Living Trust.  (Exhibit C ¶ 1).

**b.  October 2020 Amended Complaint and October 2020 Crossclaim**

38.    On October 15, 2020, First National Bank filed a second amended complaint ("October 2020 Amended Complaint") in the Malpractice Suit.  A true and correct copy of the October 2020 Amended Complaint is attached as Exhibit F.

39.    In the October 2020 Amended Complaint, which is substantially similar to the May 2019 Complaint in the Malpractice Suit, First National Bank added a cause of action for malicious prosecution against the Swier Defendants and Lippert.  (Exhibit F ¶¶ 123-133).  In the malicious prosecution cause of action against the Swier Defendants, First National Bank alleged, *inter alia*, the Swier Defendants "had a malicious intent to continue earning fees paid by Shirley

11

and/or the [Hickey] Trust based on their erroneous advice to . . . Lippert that such fees were properly payable." (*Id*. ¶ 129).

40.    On or around October 29, 2020, Lippert filed her answer to the October 2020 Amended Complaint in the Malpractice Suit and a crossclaim against the Swier Defendants ("October 2020 Crossclaim").  A true and correct copy of the October 2020 Crossclaim is attached as Exhibit G.  The October 2020 Crossclaim is substantially similar to Lippert's July 2019 Crossclaim against the Swier Defendants in the Malpractice Suit.

**c. Third Amended Complaint and December 2023 Complaint (Fourth Amended)**

41.    On July 5, 2023, Darren, as the Personal Representative of the Hickey Estate and the Trustee of the Hickey Trust, filed a third amended complaint against the Swier Defendants in the Malpractice Suit.  On December 12, 2023, Darren, as the Personal Representative of the Hickey Estate and the Trustee of the Hickey Trust, filed the December 2023 Complaint (fourth amended complaint) against the Swier Defendants in the Malpractice Suit.  (Exhibit C).

42.    In the December 2023 Complaint, the Hickey Trust and Estate alleges four causes of action against the Swier Defendants arising from their representation of Shirley and the Hickey Living Trust: (a) breach of contract; (b) legal malpractice and negligent misrepresentation; (c) breach of fiduciary duty, the duty of loyalty, and the duty of good faith; and (d) punitive damages.  (Exhibit C).

43.    In the December 2023 Complaint, the Hickey Trust and Estate seeks: (a) "general damages to include, but not limited to, mental anguish, stress, anxiety, frustration, disappointment, disability, financial losses, [and] loss of enjoyment of life"; (b) "legal fees paid to the Swier Law Firm in actions contrary to the best interest of their client Shirley Hickey, without her approval"; (c) "legal fees associated with the Court Appointed Investigator, Andrew Damgaard" in connection

12

4912-1501-8135

with the Hickey Guardianship Proceeding; (d) legal fees incurred by First National Bank incident to the Lippert DJ Suit and the Malpractice Suit; (e) "legal fees paid to MorganTheeler LLP"; (f) costs incident to the Hickey Guardianship Proceeding and defending the Lippert DJ Suit; (g) prejudgment interest; (h) reasonable attorneys' fees and costs incident to the Malpractice Suit; and (i) punitive damages as a result of the alleged "malicious, intentional, willful and wanton conduct" of the Swier Defendants.  (Exhibit C ¶¶ 52-53, 63-64, 75-76, 78-79 & Prayer for Relief).

44.　　By order dated March 6, 2026 ("March 2026 Order"), the court in the Malpractice Suit granted a joint stipulation ("March 2026 Stipulation") to amend the caption in the Malpractice Suit from ***Darren Hickey****, as Personal Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust v. Swier Law Firm, Prof. LLC, et al.* to ***Jeffry Denison****, as Personal Representative of the Estate of Shirley A. Hickey and Trustee of the Shirley A. Hickey Trust v. Swier Law Firm, Prof. LLC, et al.*  (Emphasis added).  True and correct copies of the March 2026 Order and the March 2026 Stipulation are attached together as Exhibit H.  The caption change was "necessary due to the Personal Representative of the [Hickey Estate] and Trustee of the [Hickey Trust] being changed from Darren Hickey to Jeffry Denison", subsequent to Darren's resignation as Personal Representative of the Hickey Estate and Trustee of the Hickey Trust in or around January 2026.  (Exhibit H).

45.　　A jury trial in the Malpractice Suit, upon information and belief, is scheduled to begin April 20, 2026.

### 2. Hickey Regency Trust Suit

### a. March 2020 Complaint

46.　　On March 13, 2020, Bradley, Terence, Vance, and Michelle—all children of Shirley and Cliff—filed a complaint in the Hickey Regency Trust Suit against Lippert and Darren,

13

individually and as co-trustees of the Shirley A. Hickey Regency Trust ("Hickey Regency Trust"), the Swier Firm, Harris, and the Hickey Living Trust. On or around April 27, 2020, Bradley, Terence, Vance, Michelle, Warren, and Jeannine (collectively, "Hickey Plaintiffs") filed an amended complaint ("April 2020 Complaint") in the Hickey Regency Trust Suit against Lippert and Darren, individually and as co-trustees of the Hickey Regency Trust, the Swier Firm, Harris, First National Bank, and the Hickey Living Trust. A true and correct copy of the April 2020 Complaint is attached as Exhibit I.

47.    In the April 2020 Complaint, the Hickey Plaintiffs—all beneficiaries of the Hickey Regency Trust—allege breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, legal malpractice, conversion, and unjust enrichment arising from management of the Hickey Regency Trust assets and the sale of a nursing home owned and operated by Shirley prior to her death. (Exhibit I).

48.    The Hickey Plaintiffs allege, *inter alia*: (a) "Shirley owned and operated a nursing home and assisted living facility in Chamberlain, South Dakota named the 'Regency Retirement Facility'"; (b) "Shirley organized Regency Retirement, LLC" ("Regency LLC") on or around December 15, 2000 and named herself the sole member; and (c) "Shirley then transferred certain assets of the Regency Retirement Facility into" Regency LLC. (Exhibit I ¶¶ 14-16). The Hickey Plaintiffs further allege, on or around December 28, 2012, "Shirley established the [Hickey] Regency Trust", an irrevocable trust "drafted on behalf of Shirley by lawyers at [the] Thompson [Firm]." (*Id*. ¶¶ 18-19).

49.    The Hickey Plaintiffs allege all eight of Shirley's children are beneficiaries of the Hickey Regency Trust, and Lippert and Darren are the co-trustees. (Exhibit I ¶¶ 21-24). The Hickey Plaintiffs further allege "[u]pon Shirley's death, the Regency Trust was to be distributed

14

4912-1501-8135

into a Common Pot Trust for the benefit of her then-living children and the living descendants of any deceased children." (*Id*. ¶ 23).

50.    The Hickey Plaintiffs allege, by agreement dated October 28, 2016 ("Regency Purchase Agreement"), Stroschein Properties, IV, L.L.C. purchased the Regency Retirement Facility from Regency LLC and the Hickey Living Trust for $1,825,000.00. (Exhibit I ¶¶ 29-32). The Hickey Plaintiffs further allege (a) sale of the Regency Retirement Facility closed on December 31, 2016, (b) proceeds from the sale, after taxes, closing costs, and satisfaction of a mortgage, "totaled $1,310,540.15", and (c) on January 3, 2017, "$1,310,540.14 was deposited into an account at First National Bank of Omaha, which was in Shirley's name, not the name of the [Hickey] Living Trust or [Hickey] Regency Trust." (*Id*. ¶¶ 34-36). The Hickey Plaintiffs allege "[c]ontrary to Shirley's intent, the real property and building used by the Regency Retirement Facility were never transferred to or owned by [Regency LLC] or the [Hickey] Regency Trust" and "no portion of the proceeds from the sale of the Regency Retirement Facility was ever deposited or transferred to an account in the name of the [Hickey] Regency Trust or otherwise transferred to the [Hickey] Regency Trust." (*Id*. ¶¶ 28, 34).

51.    In the April 2020 Complaint, the Hickey Plaintiffs allege Harris "performed legal work" on behalf of Shirley, Lippert, and the Hickey Regency Trust while working for the Thompson Firm and, after she moved to the Swier Firm in December 2016, Harris continued to perform legal work for Shirley, Lippert, and the Hickey Regency Trust. (Exhibit I ¶¶ 38-40).

52.    By correspondence dated July 10, 2017 from Harris to the beneficiaries of the Hickey Regency Trust ("July 10, 2017 Correspondence"), the Hickey Plaintiffs allege Harris, upon Lippert's request, "urged the beneficiaries of the [Hickey] Regency Trust to sign a Revocation & Termination Agreement" ("Revocation Agreement"). (Exhibit I ¶ 43). In the July 10, 2017

15

4912-1501-8135

Correspondence, Harris further stated "[t]he only asset the [Hickey Regency] Trust potentially owns is the goodwill of the Regency Retirement Facility," which Harris valued at $100,000, and she "offered to distribute to each beneficiary his or her share of the $100,000 in goodwill, provided that they each signed an agreement to revoke and terminate the [Hickey] Regency Trust." (*Id.*).

53.    The Hickey Plaintiffs allege (a) Harris and the Swier Firm "were representing [Lippert] and the [Hickey] Regency Trust when the July 10, 2017 [Correspondence] was sent to the beneficiaries of the [Hickey] Regency Trust", (b) Harris "sent the Revocation Agreement at the behest of [Lippert]", (c) Harris "did not share the draft Revocation Agreement with Shirley prior to sending it to the beneficiaries of the [Hickey] Regency Trust", (d) "[a]t the time [Harris] sent the July 10, 2017 [Correspondence] to the beneficiaries of the [Hickey] Regency Trust, substantial proceeds from the sale of the Regency Retirement Facility were sitting in an account in Shirley's name at the First National Bank in Omaha", and (e) "those funds were subsequently transferred out of the account at First National Bank in Omaha into an account in the name of the [Hickey] Living Trust."   (Exhibit I ¶¶ 44-46, 48).

54.    In the April 2020 Complaint, the Hickey Plaintiffs allege five causes of action: (a) breach of fiduciary duty against Lippert, Darren, the Swier Firm, and Harris; (b) aiding and abetting breach of fiduciary duty against the Swier Firm and Harris; (c) legal malpractice against the Swier Firm and Harris; (d) conversion against Lippert and Darren; and (e) unjust enrichment against First National Bank.  (Exhibit I).

55.    In Count I of the April 2020 Complaint —breach of fiduciary duty against Lippert, Darren, the Swier Firm, and Harris—the Hickey Plaintiffs allege Lippert and Darren breached their fiduciary duties to the Hickey Plaintiffs, as beneficiaries of the Hickey Regency Trust, by, *inter alia*, failing to preserve the assets of the Hickey Regency Trust, failing to ensure the Hickey

16

Regency Trust "received a share of the proceeds from the sale of the Regency Retirement Facility that it was entitled to receive as a member of" Regency LLC, misrepresenting assets held by the Hickey Regency Trust, and "[u]sing their influence as co-trustees in an attempt to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement." (Exhibit I ¶¶ 51-55).

56.     The Hickey Plaintiffs allege the Swier Firm and Harris breached their fiduciary duties to the Hickey Plaintiffs by, *inter alia*: (a) "committing and/or actively participating in the actions and omissions" of Lippert and Darren; (b) "[f]ailing to provide proper legal advice to [Lippert] relative to her fiduciary obligations and preserving the assets of [the Hickey] Regency Trust"; (c) "[f]ailing to disclose and actively concealing the malpractice and legal negligence committed by [Harris] . . . relative to her failure to properly fund [the Hickey] Regency Trust"; (d) "[f]ailing to disclose the conflict of interest that existed as a result of the malpractice claim and that the continued representation was materially and adversely affected by their own interest in avoiding malpractice liability"; (e) "[d]rafting the Revocation Agreement and July 10, 2017 [Correspondence]"; (f) "[c]oncealing the fact that assets belonging to [the Hickey] Regency Trust had been misappropriated, diverted, or dispersed in a manner contrary to the terms of the . . . trust instrument"; (g) "[f]ailing to fully disclose to the beneficiaries their rights and entitlement to proceeds from the sale of the Regency Retirement Facility"; (h) "[f]ailing to explain the purpose and effect of the Revocation Agreement"; (i) "[u]sing their influence as attorneys purportedly 'representing' Shirley in an attempt to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement"; (j) "[i]mproperly conditioning a distribution from the [Hickey] Regency Trust on the beneficiaries' agreement to sign the Revocation Agreement"; (k) "[m]isrepresenting the assets held by the [Hickey] Regency Trust";

4912-1501-8135

and (l) "[c]oncealing the facts and circumstances relative to the funding of the [Hickey] Regency Trust."  (Exhibit I ¶¶ 58-59).

57.    In Count I of the April 2020 Complaint, the Hickey Plaintiffs further allege the "actions or omissions" of the Swier Firm, Harris, Lippert, and Darren "were oppressive, constituted willful and wanton misconduct and were sufficient to raise a presumption of malice or disregard of humanity, so as to entitle [the Hickey] Plaintiffs to recover punitive damages . . . pursuant to SDCL 21-3-2."  (Exhibit I ¶ 61).

58.    In Count II of the April 2020 Complaint, the Hickey Plaintiffs allege the Swier Firm and Harris aided and abetted Lippert and Darren's breaches of fiduciary duty by "knowingly and actively participat[ing] in Darren and [Lippert's] breach of their fiduciary duties[.]" (Exhibit I ¶¶ 66-67).  The Hickey Plaintiffs further allege the "actions or omissions" of the Swier Firm and Harris "were oppressive, constituted willful and wanton misconduct and were sufficient to raise a presumption of malice or disregard of humanity, so as to entitle [the Hickey] Plaintiffs to recover punitive damages . . . pursuant to SDCL 21-3-2."  (*Id*. ¶ 68).

59.    In Count III of the April 2020 Complaint, the Hickey Plaintiffs allege legal malpractice against the Swier Firm and Harris.  (Exhibit I ¶¶ 69-86).  The Hickey Plaintiffs allege, "while working as an associate attorney at [the] Thompson [Firm]," Harris: (a) "performed legal work on behalf of Shirley regarding various estate planning matters, including the formation, funding, and administration of [the Hickey] Regency Trust and matters related thereto"; and (b) "also provided legal advice to [the Hickey] Regency Trust and [Lippert] (as co-trustee of the [Hickey] Regency Trust) relative to the funding and administration of the [Hickey] Regency Trust and matters related thereto."  (*Id*. ¶¶ 70, 72).  The Hickey Plaintiffs further allege the existence of an attorney-client relationship and a duty of care between Harris and the Hickey Plaintiffs because

18

the work she did for Shirley, Lippert, and the Hickey Regency Trust "was primarily for the benefit of the beneficiaries of the [Hickey] Regency Trust, including [the Hickey] Plaintiffs." (*Id*. ¶¶ 71, 73).

60.    In the malpractice cause of action, the Hickey Plaintiffs allege Harris moved her "practice" from the Thompson Firm to the Swier Firm in December 2016 and "continued representing Shirley, [the Hickey] Regency Trust, and [Lippert] (as co-trustee of the [Hickey] Regency Trust)" while working for the Swier Firm. (Exhibit I ¶¶ 74-75). The Hickey Plaintiffs allege the Swier Firm and Harris "breached the applicable standard of care and their duty to [the Hickey] Plaintiffs, and engaged in ongoing tortious conduct, by":

(a)    "failing to advise Shirley, Darren, and [Lippert] that neither Regency [LLC] nor [the Hickey] Regency Trust ever owned the real property used by the Regency Retirement Facility";

(b)    "failing to ensure that the membership interests in Regency [LLC], as well as the real property and building associated with the Regency Retirement Facility, were deeded, transferred, or titled in a way that would give effect to Shirley's intentions";

(c)    "failing to ensure that a portion of the proceeds from the sale of the Regency Retirement Facility, which were assets of the [Hickey] Regency Trust . . . , were held in the name of the [Hickey] Regency Trust and were not improperly diverted";

(d)    "[f]ailing to provide proper legal advice to [Lippert] relative to her fiduciary obligations and preserving the assets of the [Hickey] Regency Trust";

(e)    "[f]ailing to provide proper legal advice to Shirley relative to the funding of the [Hickey] Regency Trust";

(f)    "[a]ttempting to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement";

(g)    "[i]mproperly conditioning a distribution from the [Hickey] Regency Trust on the beneficiaries' agreement to sign the Revocation Agreement";

(h)    "[m]isrepresenting the assets held by the [Hickey] Regency Trust";

19

(i)    "[c]oncealing the facts and circumstances relative to the funding of the [Hickey] Regency Trust";

(j)    "[f]ailing to disclose the conflict of interest that existed as a result of [Harris's] own interest in avoiding the malpractice claims alleged" in the March 2020 Complaint;

(k)    "[d]rafting the Revocation Agreement and July 10, 2017 [Correspondence]";

(l)    "[c]oncealing the fact that assets belonging to the [Hickey] Regency Trust had been misappropriated, diverted, or dispersed in a manner contrary to the terms of . . . the trust instrument";

(m)    "[f]ailing to fully disclose to the beneficiaries their rights and entitlement to proceeds from the sale of the Regency Retirement Facility";

(n)    "[f]ailing to explain the purpose and effect of the Revocation Agreement";

(o)    "[u]sing their influence as attorneys purportedly 'representing' Shirley in an attempt to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement"; and

(p)    "failing to disclose and actively concealing the malpractice and legal negligence committed by [Harris] as alleged" in the March 2020 Complaint.

(*Id*. ¶¶ 80-83).

61.    The Hickey Plaintiffs further allege the actions of the Swier Firm and Harris "resulted in a continuous and unbroken course of negligent representations that was so related as to constitute one continuing wrong" and the Hickey Plaintiffs' "damages arose from the cumulative effect of the continuing and ongoing tortious conduct of [Harris] and [the] Swier [Firm], rather than the result of a single act of negligence."  (Exhibit I ¶¶ 84-86).

62.    Count IV of the April 2020 Complaint alleges conversion against Lippert and Darren. (Exhibit I ¶¶ 87-91).  The Hickey Plaintiffs allege Lippert and Darren "exercised dominion or control over or serious interference with [the Hickey] Plaintiffs' interest in their portion of the

20

assets of the [Hickey] Regency Trust" and "deprived [the Hickey] Plaintiffs of their interest in their portion of the assets of the [Hickey] Regency Trust[.]"  (*Id*. ¶¶ 90-91).

63.    In Count V of the April 2020 Complaint, the Hickey Plaintiffs allege unjust enrichment against First National Bank, as trustee of the Hickey Living Trust.  (Exhibit I ¶¶ 92-100).  The Hickey Plaintiffs allege the Hickey Living Trust "obtained assets belonging to the [Hickey] Regency Trust" as a result of fraud and "has gained the benefit of receiving all or a portion of assets belonging to the [Hickey] Regency Trust."  (*Id*. ¶¶ 93-94).  The Hickey Plaintiffs further allege "[i]t would be unjust and inequitable to allow the [Hickey] Living Trust to retain the assets belonging to [the Hickey] Regency Trust" and the Hickey Plaintiffs, as beneficiaries of the Hickey Regency Trust, "are entitled to restitution" or, alternatively, imposition of a constructive trust to establish the assets of the Hickey Regency Trust.  (*Id*. ¶¶ 98-100).

64.    In the Hickey Plaintiffs' Prayer for Relief in the April 2020 Complaint, they seek: (a) compensatory damages; (b) "[o]rder of an accounting to establish the amount and location of the assets of [the Hickey] Regency Trust, and thereupon trace and recover identifiable [Hickey] Regency Trust property"; (c) a "judgment of restitution" against Lippert, Darren, the Swier Firm, and Harris in favor of the Hickey Plaintiffs; (d) imposition of "an implied or constructive trust over such assets as necessary for purposes of establishing what assets belong to [the Hickey] Regency Trust"; (e) an "order compelling" the Swier Firm, Harris, Darren, and Lippert "to redress their breach of trust"; (f) punitive damages; (g) pre-judgment interest; (h) post-judgment interest; (i) attorneys' fees, disbursements, and costs of suit incurred by the Hickey Plaintiffs; and (j) "[s]uch other relief as the Court deems just and equitable under the circumstances."  (Exhibit I, Prayer for Relief).

4912-1501-8135

**b. Lippert and Darren's May 2020 Crossclaim**

65.     On or around May 13, 2020, in the Hickey Regency Trust Suit, Lippert and Darren filed a crossclaim ("Lippert Crossclaim") against the Swier Firm, Harris, First National Bank, and the Hickey Living Trust.  A true and correct copy of the Lippert Crossclaim is attached as Exhibit J.

66.     In the Lippert Crossclaim, Lippert and Darren allege the Swier Firm and Harris (a) represented Shirley, the Hickey Living Trust, and the Hickey Regency Trust and (b) had a duty to advise Lippert and Darren "of their responsibilities, if any, as Co-Trustees of the [Hickey] Regency Trust and more particularly to apprise them of any responsibility they had to advise or require" Shirley or the Hickey Living Trust "to fund the [Hickey] Regency Trust."  (Exhibit J, Lippert Crossclaim ¶¶ 5-6).  Lippert and Darren further allege the Swier Firm and Harris "had a duty to represent [their] clients," Shirley, the Hickey Living Trust, and the Hickey Regency Trust, "and to the extent that they failed to satisfy [their] duties as generally set forth in the [April 2020 Complaint], [Harris and the Swier Firm] are solely responsible for any damages that arose as a result of that breach."  (*Id*., Lippert Crossclaim ¶ 8).

67.     Lippert and Darren allege "[i]f it is determined that the [Hickey] Plaintiffs, or any of them, were damaged as a result of the actions or inactions of Lippert or [Darren], such damages are solely the result of the breach of the duties owed by [Harris and the Swier Firm] to" Shirley, the Hickey Living Trust, the Hickey Regency Trust, or the trustees of any such trusts, and Harris and the Swier Firm "are liable to Lippert and [Darren] to indemnify and hold them harmless for any such claims."  (Exhibit J, Lippert Crossclaim ¶ 9).  In the Lippert Crossclaim's Prayer for Relief, Lippert and Darren seek: (a) a judgment against Harris, the Swier Firm, and the Hickey Living Trust "for all sums that may be adjudged against [Lippert and Darren] in favor of the

22

[Hickey] Plaintiffs"; (b) costs associated with the Hickey Suit; and (c) "such other relief as the Court deems just and equitable." (*Id*., Lippert Crossclaim's Prayer for Relief).

68.     By order dated August 30, 2021, upon stipulation of the parties to the Hickey Regency Trust Suit, the court stayed all proceedings in the Hickey Regency Trust Suit.

### III.  The Policy and Claim-Related Communications

### A.  The Policy

69.     ALPS issued the Policy to the Swier Firm for the policy period December 30, 2017 to December 30, 2018.  (Exhibit A, Declarations Items 1 and 3).  The Policy provides limits of liability of $2,000,000 each claim and $2,000,000 in aggregate.  (*Id*., Declarations Item 4).

70.     Swier, Henderson, and Harris are listed as individual attorneys insured under the Policy.  (Exhibit A, Declarations Item 2).

71.     The Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit A, Insuring Agreements § 1.1).

72.     The Policy's insuring agreement states, in relevant part:

1.1     COVERAGE

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1   the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the Claim arises from or is in connection with:

> (a)   an act, error or omission in Professional Services that were or should have been rendered by the Insured, or

23

> (b)   a Personal Injury arising out of the Professional Services of the Insured;

* * *

1.2    DEFENSE AND CLAIM EXPENSES

> 1.2.1   For any Claim covered under the Policy, the Company shall have the rights and the duty to defend such Claim even if any or all of the allegations of the Claim are groundless, false or fraudulent.  The Company . . . shall pay Claim Expenses in accordance with the terms of this Policy.  The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit A, Insuring Agreements §§ 1.1-1.2.1) (emphasis in original).

73.    "Claim" is defined in the Policy as "a demand for money or services including but not limited to the service of suit or institution of arbitration proceedings against the Insured[.]" (Exhibit A, Definitions § 2.3).  The Policy specifically excludes from the definition of "Claim" any "demand, service or proceeding arising from or in connection with . . . any Bodily Injury of any person."  (*Id.*, Definitions § 2.3.4).

74.    "Bodily Injury" is defined in the Policy as:

> [A]ny injury to the body, any sickness or disease, or any death.  Bodily Injury also includes any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, or shock, or death resulting therefrom, regardless of whether or not such condition results from any physical injury, sickness or disease, or from the death of any person.

(Exhibit A, Definitions § 2.2).

75.    "Professional Services" are defined in the Policy as "services or activities performed solely for others as an Attorney in an attorney-client relationship on behalf of one or more clients applying the Attorney's specialized education, knowledge, skill, labor, experience and/or training[.]"  (Exhibit A, Definitions § 2.24.1).

24

76. "Damages" is defined in the Policy as "any monetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "Damages":

2.6.1 punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2 awards deemed uninsurable by law;

2.6.3 injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4 restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5 any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit A, Definitions § 2.6).

77. "Claim Expenses" are defined in the Policy as:

2.4.1 fees charged by any attorney(s) designated by the Company to defend a Claim or otherwise represent an Insured; and

2.4.2 all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by the Company, or by the Insured with prior written consent of the Company.

(Exhibit A, Definitions §§ 2.4.1-2.4.2).

78. The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent

of an Insured, or any Personal Injury arising from such conduct[.]" (Exhibit A, Exclusions § 3.1.1) (emphasis in original).

79.    The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]" (Exhibit A, Exclusions § 3.1.8) (emphasis in original).

80.    The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured[.]" (Exhibit A, Exclusions § 3.1.9) (emphasis in original).

## B. Notice to ALPS and Claim-Related Communications

81.    By email correspondence from Swier dated October 19, 2018, the Swier Firm first provided ALPS with notice of circumstances from which the Claim arises.

82.    By correspondence dated January 11, 2019, ALPS provided its reservation of rights regarding coverage for the Swier Defendants with respect to the Claim under the Policy. In the January 2019 Reservation, ALPS agreed to provide the Swier Defendants with a defense against the Claim under the Policy, subject to its terms and ALPS's reservation of rights, including, but not limited to, its right to reimbursement of Claim Expenses paid by ALPS in defending the Claim.

83.    By correspondence dated July 1, 2019, ALPS provided its supplemental reservation of rights regarding coverage for the Swier Defendants under the Policy with respect to the Claim, as articulated in the Malpractice Suit.

26

4912-1501-8135

84.    By correspondence dated May 20, 2020, ALPS provided its supplemental reservation of rights regarding coverage under the Policy for the Claim, as articulated in the Malpractice Suit and the Hickey Regency Trust Suit.

85.    By correspondence dated October 7, 2022, subsequent to the filing of amended pleadings in the Malpractice Suit, ALPS provided its supplemental reservation of rights regarding coverage under the Policy for the Claim.

86.    By correspondence dated December 13, 2023, subsequent to the filing of the December 2023 Complaint in the Malpractice Suit, ALPS provided its supplemental reservation of rights regarding coverage under the Policy for the Claim.

## FIRST CAUSE OF ACTION

### (For Declaratory Relief – Against all Defendants)

87.    ALPS incorporates and realleges paragraphs 1 through 86 as if fully set forth herein.

### A.  *Damages*

88.    The Policy does not afford coverage for the Claim to the extent the relief requested does not constitute "Damages" as defined in the Policy.  (Exhibit A, Insuring Agreements § 1.1 & Definitions § 2.6).

89.    The Policy specifically excludes from the definition of "Damages":

2.6.1    punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2    awards deemed uninsurable by law;

2.6.3    injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4    restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other

27

funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5   any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit A, Definitions § 2.6).

### 1. Malpractice Suit

90.     In the December 2023 Complaint against the Swier Defendants in the Malpractice Suit, the Hickey Trust and Estate seeks, *inter alia*: (a) "legal fees paid to the Swier Law Firm in actions contrary to the best interest of their client Shirley Hickey, without her approval"; (b) "legal fees associated with the Court Appointed Investigator, Andrew Damgaard" in connection with the Hickey Guardianship Proceeding; (c) legal fees incurred by First National Bank incident to the Lippert DJ Suit and the Malpractice Suit; (d) "legal fees paid to MorganTheeler LLP"; (e) costs incident to the Hickey Guardianship Proceeding and defending the Lippert DJ Suit; (f) prejudgment interest; (g) reasonable attorneys' fees and costs incident to the Malpractice Suit; and (h) punitive damages.  (Exhibit C ¶¶ 52-53, 63-64, 75-79 & Prayer for Relief).

91.     The Hickey Trust and Estate's demand for the disgorgement of fees paid to the Swier Firm is excluded from the definition of "Damages", and outside the coverage afforded by the Policy, because the Hickey Trust and Estate seeks "[r]estitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured."  (Exhibit A, Definitions § 2.6.4).

92.     The Hickey Trust and Estate's demand for punitive damages is excluded from the definition of "Damages" and outside the coverage afforded by the Policy.  (Exhibit A, Definitions § 2.6.1).

93.    The Hickey Trust and Estate's demands for prejudgment interest and attorneys' fees and costs incident to the Malpractice Suit, the Hickey Guardianship Proceeding, and the Lippert DJ Suit may not be covered "Damages" under the Policy.  (Exhibit A, Definitions § 2.6.1).

### 2.  Hickey Regency Trust Suit

94.    In the Hickey Regency Trust Suit, the Hickey Plaintiffs seek against the Swier Firm, Harris, Lippert, Darren, and others, *inter alia*: punitive damages, declaratory and injunctive relief, pre-judgment and post-judgment interest, a "judgment of restitution", and the Hickey Plaintiffs' attorneys' fees and costs incident to the Hickey Regency Trust Suit.  (Exhibit I, Prayer for Relief).

95.    In the Lippert Crossclaim in the Hickey Regency Trust Suit, Lippert and Darren seek, *inter alia*, (a) a judgment against the Swier Firm, Harris, First National Bank, and the Hickey Living Trust "for all sums that may be adjudged against [Lippert and Darren] in favor of the [Hickey] Plaintiffs" and (b) costs associated with the Hickey Regency Trust Suit.  (Exhibit J, Prayer for Relief).

96.    The demands in the Hickey Regency Trust Suit for punitive damages, declaratory relief, and injunctive relief are excluded from the definition of "Damages" and outside the coverage afforded by the Policy.  (Exhibit A, Definitions §§ 2.6.1, 2.6.3).

97.    The demands in the Hickey Regency Trust Suit for prejudgment interest and attorneys' fees and costs incident to the Hickey Regency Trust Suit may not be covered "Damages" under the Policy.  (Exhibit A, Definitions § 2.6.1).

### B.  Bodily Injury (Malpractice Suit)

98.    The Policy only affords coverage with respect to Damages arising from or in connection a "Claim" against the Swier Defendants.  (Exhibit A, Insuring Agreements § 1.1).

4912-1501-8135

99. "Claim" is defined in the Policy as "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the Insured[.]" (Exhibit A, Definitions § 2.3). The Policy specifically excludes from the definition of "Claim" any "demand, service or proceeding arising from or in connection with . . . any Bodily Injury of any person." (*Id*., Definitions § 2.3.4).

100. The Policy defines "Bodily Injury" to include "any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, or shock, or death resulting therefrom, regardless of whether or not such condition arises from any physical injury, sickness or disease, or from the death of any person." (Exhibit A, Definitions § 2.2).

101. The December 2023 Complaint in the Malpractice Suit seeks damages for "unnecessary stress and emotional distress and anguish" suffered by Shirley. (Exhibit C, Prayer for Relief). The December 2023 Complaint alleges the Swier Defendants' "collective failures to fulfill their legal duties owed to Shirley" caused Shirley to suffer "mental anguish, stress, anxiety, frustration, disappointment, [and] loss of enjoyment of life[.]" (*Id*. ¶¶ 52, 63, 75).

102. Upon information and belief, Shirley passed away on September 12, 2019. (*See* Exhibit C ¶ 1).

103. To the extent the Claim arises from or in connection with any actual or alleged Bodily Injury, which includes emotional injury, distress, and death resulting therefrom, of any person, the Policy would not afford coverage. (Exhibit A, Insuring Agreements § 1.1 & Definitions §§ 2.2, 2.3.4).

### C. Exclusions

104. The Policy does not afford coverage for the Claim to the extent any exclusions in the Policy apply to exclude coverage. (Exhibit A, Exclusions § 3).

### 1. *Exclusion 3.1.1 – Dishonest Acts (Malpractice Suit & Hickey Regency Trust Suit)*

105.    The Policy excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from such conduct[.]"  (Exhibit A, Exclusions § 3.1.1) (emphasis in original).

106.    The December 2023 Complaint in the Malpractice Suit alleges the Swier Defendants, *inter alia*: (a) breached South Dakota's Rules of Professional Conduct; (b) breached fiduciary duties owed to Shirley and the Hickey Living Trust, "which breach gives rise to a claim for punitive damages"; and (c) engaged in "malicious, intentional, willful and wonton conduct, as the same are more fully identified as SDCL § 21-3-2."  (Exhibit C ¶¶ 71-73, 77-79).

107.    SDCL § 21-3-2 provides: "In any action for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant."

108.    In the Hickey Regency Trust Suit, the Hickey Plaintiffs allege breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the Swier Firm, Harris, and others. (Exhibit I ¶¶ 51-68).  Specifically, the Hickey Plaintiffs allege the Swier Firm and Harris engaged in the following tortious conduct, *inter alia*:

    (a)    "[a]ttempting to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement";

(b)   "[i]mproperly conditioning a distribution from the [Hickey] Regency Trust on the beneficiaries' agreement to sign the Revocation Agreement";

(c)   "[m]isrepresenting the assets held by the [Hickey] Regency Trust";

(d)   "[c]oncealing the facts and circumstances relative to the funding of the [Hickey] Regency Trust";

(e)   "[f]ailing to disclose the conflict of interest that existed as a result of their own interest in avoiding the malpractice claims alleged" in the April 2020 Complaint;

(f)   "[c]oncealing the fact that assets belonging to the [Hickey] Regency Trust had been misappropriated, diverted, or dispersed in a manner contrary to the terms of . . . the trust instrument";

(g)   "[u]sing their influence as attorneys purportedly 'representing' Shirley in an attempt to persuade the beneficiaries of the [Hickey] Regency Trust to waive their rights by signing the Revocation Agreement"; and

(h)   "failing to disclose and actively concealing the malpractice and legal negligence committed by [Harris] as alleged" in the April 2020 Complaint.

(*Id*. ¶¶ 80-83).

109.   The Hickey Plaintiffs further allege (a) the Swier Firm and Harris "knowingly and actively participated in Darren and [Lippert's] breach of their fiduciary duties" to the Hickey Plaintiffs and (b) the "actions or omissions" of the Swier Firm and Harris "were oppressive, constituted willful and wanton misconduct and were sufficient to raise a presumption of malice or disregard of humanity, so as to entitle [the Hickey] Plaintiffs to recover punitive damages . . . pursuant to SDCL 21-3-2." (Exhibit I ¶¶ 61, 66, 68).

110.   In the Lippert Crossclaim in the Hickey Regency Trust Suit, Lippert and Darren allege, if the Hickey Plaintiffs "were damaged as a result of the actions or inactions of Lippert or [Darren], such damages are solely the result of the breach of the duties owed by [the Swier Firm and Harris] to" Shirley, the Hickey Living Trust, the Hickey Regency Trust, or the trustees of any such trusts, and the Swier Firm and Harris "are liable to Lippert and [Darren] to indemnify and

32

hold them harmless for any such claims." (Exhibit J, Lippert Crossclaim ¶ 9). Lippert and Darren seek, *inter alia*, a judgment against the Swier Firm, Harris, and the Hickey Living Trust "for all sums that may be adjudged against [Lippert and Darren] in favor of the [Hickey] Plaintiffs[.]" (*Id*., Lippert Crossclaim's Prayer for Relief).

111.    The Claim is outside the coverage afforded by the Policy to the extent it arises from or in connection with any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error, or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from or in connection with such conduct. (Exhibit A, Exclusions § 3.1.1).

### 2.  Exclusion 3.1.9 – Return of Fees (Malpractice Suit)

112.    The Policy excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured[.]" (Exhibit A, Exclusions § 3.1.9) (emphasis in original).

113.    In the December 2023 Complaint in the Malpractice Suit, the Hickey Trust and Estate seeks "special damages to include, but not limited to, legal fees paid to the Swier Law Firm in actions contrary to the best interest of their client Shirley Hickey, without her approval[.]" (Exhibit C ¶¶ 53, 64, 76 & Prayer for Relief).

114.    The Claim is outside the coverage afforded by the Policy to the extent it arises from or in connection with any dispute over fees or costs or seeks, whether directly or indirectly, the return, reimbursement, or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured. (Exhibit A, Exclusions § 3.1.9).

33

4912-1501-8135

### 3. Exclusion 3.1.8 – Conversion, Misappropriation, or Negligent Supervision of Client Funds or Property (Hickey Regency Trust Suit & Malpractice Suit)

115.    The Policy excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]" (Exhibit A, Exclusions § 3.1.8) (emphasis in original).

116.    In the Hickey Regency Trust Suit, the Hickey Plaintiffs allege conversion against Lippert and Darren.  (Exhibit I ¶¶ 87-91).  The Hickey Plaintiffs allege Lippert and Darren "exercised dominion or control over or serious interference with [the Hickey] Plaintiffs' interest in their portion of the assets of the [Hickey] Regency Trust" and "deprived [the Hickey] Plaintiffs of their interest in their portion of the assets of the [Hickey] Regency Trust[.]" (*Id.* ¶¶ 90-91).  The Hickey Plaintiffs further allege (a) Harris "performed legal work on behalf of the [Hickey] Regency Trust and [Lippert] while working as an associate" at the Thompson Firm and the Swier Firm and (b) the Swier Firm and Harris concealed "the fact that assets belonging to the [Hickey] Regency Trust has been misappropriated, diverted, or dispersed in a manner contrary to the terms of . . . the trust instrument." (*Id.* ¶¶ 72, 83).

117.    In the Lippert Crossclaim in the Hickey Regency Trust Suit, Lippert and Darren allege, if the Hickey Plaintiffs "were damaged as a result of the actions or inactions of Lippert or [Darren], such damages are solely the result of the breach of the duties owed by [the Swier Firm and Harris] to" Shirley, the Hickey Living Trust, the Hickey Regency Trust, or the trustees of any

34

4912-1501-8135

such trusts, and the Swier Firm and Harris "are liable to Lippert and [Darren] to indemnify and hold them harmless for any such claims."  (Exhibit J, Lippert Crossclaim ¶ 9).

118.    The December 2023 Complaint in the Malpractice Suit alleges, *inter alia*: (a) the Swier Defendants "[i]ncorrectly advis[ed] Kristina Lippert that she should pay fees for" the Hickey Guardianship Proceeding and to pursue the Lippert DJ Suit "from monies belonging to Shirley and/or the [Hickey Living] Trust"; (b) the Swier Defendants failed "to uphold their duty of loyalty and fiduciary duty to protect the interests of Shirley and the [Hickey Living] Trust"; (c) the Swier Defendants "had access to and were entrusted with Shirley and the [Hickey Living] Trust's financial information"; (d) the Swier Defendants "breached the duties owed to Shirley and [the Hickey Living] Trust in using such information to assist and pay for their representation of Kristina Lippert"; and (e) the Swier Defendants "invoiced Shirley for the legal representation against her in the" Hickey Guardianship Proceeding and through the Lippert DJ Suit "and were paid with funds from the [Hickey Living] Trust for the legal representation of Kristina Lippert who [the Swier Defendants] knew was using funds from the [Hickey Living] Trust."  (Exhibit C ¶¶ 62, 68, 73-74).

119.    The Claim is outside the coverage afforded by the Policy to the extent it arises from or in connection with any conversion, misappropriation, improper commingling, or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property.  (Exhibit A, Exclusions § 3.1.8).

120.    An actual controversy exists between ALPS and Defendants regarding whether the Policy affords indemnity coverage for the Claim.

4912-1501-8135

121.    Because the Claim or certain aspects of it are outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford indemnity coverage for the Claim or certain aspects of it, and ALPS has no duty to indemnify the Swier Defendants under the Policy with respect to the Claim or certain aspects of it.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.    Declaring the Policy does not afford coverage to the Swier Defendants with respect to the Claim or certain aspects of it;

2.    Declaring ALPS has no duty to indemnify the Swier Defendants under the Policy with respect to the Claim or certain aspects of it; and

3.    Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.


Dated this 24th day of March, 2026.


/s/ Gillian G. O'Hara
Gillian G. O'Hara
South Dakota Bar No. 4363
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102
Telephone: (402) 346-6000
Email: gigi.ohara@kutakrock.com

*Counsel for Plaintiff ALPS Property & Casualty Insurance Company*

36

4912-1501-8135

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ALPS PROPERTY & CASUALTY INSURANCE COMPANY,

## DEFENDANTS

SWIER LAW FIRM, PROF. LLC; SCOTT R. SWIER; MICHAEL HENDERSON; LINDSAY M. HARRIS, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bon Homme County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gillian G. O'Hara, Kutak Rock, LLP
1650 Farnam St., Omaha, NE 68102 402 346-6000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [x] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 2201(a), 2202, and 1332

Brief description of cause:
Declaratory relief regarding insurance coverage with amount in controversy exceeding $75,000

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   March 24, 2026

SIGNATURE OF ATTORNEY OF RECORD   /s/ Gillian G. O'Hara

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____